UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

-------------------------------------------------X

In re:

SALANDER-O'REILLY GALLERIES,
LLC
                          Debtor.

-------------------------------------------------X

KRAKEN INVESTMENTS LIMITED,
                          Appellant,

                v.

ALAN M. JACOBS, The Liquidation
Trustee of the SOG Liquidation Trust
                          Appellee.

-------------------------------------------------X

Chapter 11

Case No. 07-30005 (CGM)

Case No. 7:11-cv-06133-CS

**BRIEF OF KRAKEN INVESTMENTS LIMITED AS APPELLANT**

David I. Faust, Esq.
Petra von Ziegesar, Esq.
Faust Oppenheim LLP
488 Madison Avenue, 17th Floor
New York, New York 10022
T: (212) 751-7700
F: (212) 371-8410

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION AND STATEMENT OF BASIS FOR APPELLATE
JURISDICTION ...................................................................................... 1

STATEMENT OF THE ISSUES.................................................................... 2

STANDARDS OF REVIEW ......................................................................... 3

STATEMENT OF THE CASE........................................................................ 3

SUMMARY OF THE ARGUMENT ............................................................... 5

ARGUMENT ............................................................................................. 7

   I.    THE BANKRUPTCY COURT ERRED IN NOT APPLYING FEDERAL
        CONFLICT OF LAW RULES, WHICH ARE APPLICABLE IN NON-
        DIVERSITY ACTIONS, TO THE ISSUE OF WHICH LAW SHOULD BE
        USED TO DETERMINE THE PRE-PETITION OWNERSHIP OF A
        BOTTICELLI. ..................................................................................... 7

           A Bankruptcy Court did not Analyze Pre-Petition Ownership    8
           B Section 544 of the Bankruptcy Code does not Apply    10

   II.    THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING
        THE ENFORCEMENT OF THE PARTIES' CONTRACTUAL CHOICE OF
        JERSEY LAW AND ARBITRATION CLAUSE IN THE CONSIGNMENT
        AGREEMENT AND THEREFORE ERRED IN FINDING THAT NEW
        YORK LAW PRE-EMPTS JERSEY LAW IN THE DETERMINATION OF
        THE PRE-PETITION STATUS OF A BOTTICELLI. ...................................... 11

           A State Laws Determine Property Rights    11
           B Federal Conflict of Law Determines which State's Property Rights    12
    Laws Apply

   III.   THE BANKRUPTCY COURT ERRED IN FINDING THAT NEW YORK
        LAW WOULD NOT RESPECT THE PARTIES' CONTRACTUAL CHOICE
        OF JERSEY LAW. ............................................................................... 15

           A New York Uniform Commercial Code    15
           B Arbitration    20

F:\2367-101\Appellant's Brief Final.doc

IV.   THE BANKRUPTCY COURT ERRED IN ITS ASSUMPTION OF A VALID
PRE-PETITION BANK LIEN ON THE BOTTICELLI, WITHOUT
ANALYSIS, WHEN THE BANK LOAN DOCUMENTS ON THEIR FACE
DISCLAIM CONSIGNED ART AS COLLATERAL......................................   22

CONCLUSION............................................................................................   25

F:\2367-101\Appellant's Brief Final.doc

## TABLE OF AUTHORITIES

**Federal Statutes and Codes**

U.S. Const. Art I, § 8, cl. 4 ...................................................................... 8
9 U.S.C. § 2 ............................................................................................ 20
11 U.S.C. § 105 ..................................................................................... 21
11 U.S.C. § 158 ..................................................................................... 2
11 U.S.C. § 321-323 ............................................................................. 8
11 U.S.C. § 362 ..................................................................................... 5,8
11 U.S.C. § 507 ..................................................................................... 8
11 U.S.C. § 541 ..................................................................................... 8
11 U.S.C. § 544 ..................................................................................... 10,21
11 U.S.C. § 1101 ................................................................................... 8
11 U.S.C. § 1107 ................................................................................... 8
11 U.S.C. § 1141 ................................................................................... 8
28 U.S.C. § 158(a) ................................................................................ 2


**State Statutes**

N.Y. UCC § 1-102 ................................................................................. 16-19
N.Y. UCC § 1-105 ................................................................................. 15-17
N.Y. UCC § 9-301 ................................................................................. 16-18
N Y. UCC § 9-102 ................................................................................. 18
N.Y. CPLR § 7503 ................................................................................ 20


**Foreign Law**

Arbitration (Jersey) Law 1998 .............................................................. 1,6,8,
                                                                                       12,18,25


**Caselaw**

Accord Aron v. Gillman,
309 N.Y. 157, 128 N.E.2d 284 288 (N.Y. 1955) ................................. 12
Aramarine Brokerage Inc. v. OneBeacon Insurance Company,
307 Fed App. 562, 564 (2d Cir. 2009) ................................................. 15
In re AroChem Corp.,
176 F.3d 610, 620 (2d Cir. 1999) ......................................................... 3
In re Bennett Funding Group, Inc.,
146 F.3d 136, 138 (2d Cir. 1998) ......................................................... 3
The Bremen et al. v. Zapata Off-Shore Co.,
407 U.S. 1, 18, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972) .................... 14
Butner v U.S.,
440 U.S. 48 (1979) ............................................................................... 7,11-
                                                                                       12, 14

Cap Gemini Ernst & Young v. Nackel,
2004 U.S.Dist. Lexis 4492 * 8 (S.D.N.Y. 2004) *aff'd* 346 F3d 360 (2d Cir.
2003) ............................................................................................ 19

In re Chateaugay et al.,
170 B.R. 551, 554 (S.D.N.Y. 1994) ............................................... 12

In re CMR Mortgage Fund, LLC,
416 B.R. 720, 728 (Bankr. N.D.C.A. 2009) ................................... 13

Cooney v. Osgood Machinery Inc.,
81 NY2d 66,  78 (1993) ................................................................. 19

In re Delta Airlines,
603 F3d 139, 146 (2d Cir. 2010) ................................................... 12

In re Dreier LLP,
429 BR 112, 125 (S.D.N.Y. 2010)............................................... 7,11,14

Ehrlich-Bober 7 Co. v. University of Houston,
49 N.Y.2d 574, 584, 404 N.E.2d 726, 427 N.Y.S.2d 604 (1980) ........... 19

Freedman v. Chemical Constr. Corp.,
43 N.Y.2d 260, 265, 372 N.E.2d 12, 401 N.Y.S.2d 176 (1977) ............. 15

Granfinanciara S.A. v. Nordberg,
492 U.S. 33 (1989) ...................................................................... 8

Genesco, Inc. v. T. Kakiuchi & Co.,
815 F.2d 840 (2d Cir. 1987)......................................................... 21

Greenfield v. Philles Records, Inc.,
98 N.Y.2d 562, 780 N.E.2d 166, 170, 750 N.Y.S.2d 565 (2002) ........... 12

Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,
230 F.3d 549, 556 (2d Cir. 2000) ................................................. 15

Hays and Company as Trustee for Monge Oil Corporation v. Merrill Lynch,
Pierce, Fenner & Smith, Inc.,
885 F2d, 1149, 1150 (3d Cir. 1989) .............................................. 20-21

Hong Kong and Shanghai Bank v. HFH USA Corporation,
805 F.Supp 133 (W.D.N.Y. 1992) ................................................ 17

Interconnect Tel. Services, Inc.,
59 BR 397, 399 (S.D.N.Y. 1986) ................................................. 10

Klaxon Co. v. Stentor Electric Manufacturing Co.,
313 U.S. 487 (1941) .................................................................... 14

In re Koreag, Controle et Revision SA,
961 F.2d 341, 349 (2d Cir. 1992)................................................. 7,11-
                                                                              12, 14

Loucks v Standard Oil Co. of N.Y.,
224 N.Y. 99, 111, 120 N.E. 198 (1918) ....................................... 19

Maross Constr., Inc. v. Central New York Regional Transp. Authority,
 66 N.Y.2d 341 (1985) ................................................................ 21

MBNA Am. Bank, N.A. v. Hill,
436 F.3d 104 (2d Cir. 2006) ........................................................ 21

Mcphee v. General Electric International, Inc.,
2010 U.S. Dist. Lexis 42945, (S.D.N.Y. 2010) ............................. 18

iv

<u>In re Millenium Seacarriers Inc.,</u>
96 Fed Appx 753, 757 (2d Cir. 2004) ................................................ 14
<u>In re Morgansen's Ltd.,</u>
302 B.R. 784, 789 (Bankr. E.D.N.Y. 2003)....................................... 20
<u>Nobelman v. American Savings Bank,</u>
124 L. Ed. 2d 228, 113 S. Ct. 2106, 2110 (1993) .............................. 11
<u>N. Pipeline Construction Co. v. Marathon Pipe Line Co.,</u>
458 U.S. 50 (1982) ....................................................................... 8, 21
<u>In the Matter of Penn-Dixie Industries, Inc.,</u>
22 B.R. 794, 797 (Bankr. S.D.N.Y. 1982) ....................................... 15
<u>Roby, et al. v. Corporation of Lloyd's et al.,</u>
996 F.2d 1353, 1360-61 (2d Cir. 1993) ............................................ 14
<u>Stern v. Marshall,</u>
131 S. Ct. 2594 (2011) ................................................................... 8
<u>In re United States Lines,</u>
197 F3d 631 (2d Cir. 1999) ............................................................. 21
<u>In re Valley Media,</u>
279 B.R. 105 (Bankr. D. Del. 2002) ................................................ 14
<u>Vanston Bondholders Protective Committee v. Green,</u>
329 U.S. 156, 91 L. Ed. 162, 67 S. Ct. 237 (1946) ........................... 11
<u>Walsbach Electric Corp. v. Mastec North America, Inc.,</u>
7 N.Y. 3d. 624 (2006) ..................................................................... 19

**Secondary Sources**
*5 Corbin on Contracts* § 24.21 (Joseph M. Perillo ed., 2009)............... 12
*Restatement (Second) Conflicts of Laws*, Section 187 .......................... 13-19
*Alan N. Resnick* "The Enforceability of Arbitration Claims in Bankruptcy." 15
Am. Bank. L. Review 183, 193 (2007).............................................. 9
*Special Report of the Tribar Opinion Committee*, U.C.C. Security Interest
Opinions – Revised Article 9,  published in The Business Lawyer; Vol. 58,
August 2003         ......................................................................... 17

v

## INTRODUCTION AND STATEMENT OF THE BASIS
## OF APPELLATE JURISDICTION

Kraken Investments Limited, a corporation organized and existing under the laws of the British Virgin Islands, with its principal place of business located at 19 Seaton Place, St. Heiler, Jersey, Channel Islands JE4 8RZ ("Kraken") appeals an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issued on July 18, 2011 (entered on August 1, 2011) (the "Order").

The Order denied Kraken's motion for relief from the automatic stay in the Bankruptcy Code to permit Kraken to commence arbitration under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands) against Alan M. Jacobs, in his capacity as Liquidation Trustee of the SOG Liquidation Trust, pursuant to a written consignment agreement designating Jersey Law. The Bankruptcy Court also (a) denied enforceability of the arbitration provision of the Jersey Law clause and (b) determined that the choice of law provision in the consignment agreement was preempted by the New York Uniform Commercial Code.

The Bankruptcy Court's analysis of the enforceability of the choice of law provision failed to properly consider Kraken's argument that Federal common law choice of law principles should have guided the Bankruptcy Court's decision. The Bankruptcy Court misconstrued significant precedent. Further, the Bankruptcy Court assumed that the Debtor (now a liquidation trust) came by its rights by operation of the Bankruptcy Code based on a valid lien, which (erroneously) assumed that the Botticelli was pre-petition property of the Debtor. This not only disregards the proper choice of law, it

1

disregards the bank loan documents on which the alleged lien is based which, on their face, disclaim consigned art as collateral.

The Order is final in the sense that it prevents Kraken from arbitrating in Jersey, under Jersey Law, pursuant to the consignment agreement.  This Court therefore has appellate jurisdiction to review the Order under 28 U.S.C. § 158(a).

Kraken respectfully requests oral argument.  Kraken respectfully requests that this Court reverse the Bankruptcy Court and hold that the automatic stay is lifted as to Kraken to permit Kraken to commence arbitration under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands) against Alan M. Jacobs, in his capacity as Liquidation Trustee of the SOG Liquidation Trust.

## STATEMENT OF THE ISSUES PRESENTED

Kraken raises four issues on appeal:

1.      Whether the Bankruptcy Court erred in not applying Federal conflict of law rules, which are applicable in non-diversity actions, to the issue of which law should be used to determine the pre-petition ownership of a Botticelli.

2.      Whether the Bankruptcy Court abused its discretion in denying the enforcement of the parties' contractual choice of Jersey law and arbitration clause in the Consignment Agreement and therefore erred in finding that New York law pre-empts Jersey law in the determination of the pre-petition status of a Botticelli.

3.      Whether the Bankruptcy Court erred in finding that New York law would not respect the parties' contractual choice of Jersey law.

2

4.      Whether the Bankruptcy Court erred in its assumption of a valid pre-petition bank lien on the Botticelli, without analysis, when the Bank loan documents on their face disclaim consigned art as collateral.

## STANDARDS OF REVIEW

Questions of law are reviewed *de novo.* In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999); *see also* In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998).  The question of the proper choice of law under which to determine the pre-petition statute of the Botticelli is a matter of law, as is the construction of the loan documents.  This appeal only raises issues of law.

## STATEMENT OF THE CASE

Kraken is, and has been at all times herein mentioned, a corporation organized and existing under the laws of the British Virgin Islands, with its principal place of business located at 19 Seaton Place, St. Heiler, Jersey, Channel Islands JE4 8RZ. Debtor, and has been at all times herein mentioned, a New York limited Liability Company which operated an art gallery at 22 East 71st Street, New York, New York 10021.  After the Plan was filed, the SOG Liquidating Trust was created and Alan M. Jacobs was appointed as the Liquidating Trustee.  For consistency, Appellee will be referred to herein as "Debtor."

On or about May 3, 2006, the Debtor agreed to accept on consignment from Kraken, *Madonna and Child* by Sandro Botticelli, tempura on panel, 14 x 10 $^3/_8$ inches ("Botticelli")  pursuant to a letter agreement ("Botticelli Consignment Agreement"). Bankr. Docket No. 399.[1]

---

[1] Appellant's Designation of Contents for Inclusion in Record on Appeal and Appellee's Counter-Designation of Items to be Included in Record on Appeal shall be cited as "Bankr. Docket No. __".

F:\2367-101\Appellant's Brief\Final.doc

The owner of Kraken is an Israeli art dealer, Ronald Fuhrer.  Prior to the consignment of the Botticelli, neither the officers and directors of Kraken nor Mr. Fuhrer were, or had any reason to be, familiar with New York law.  Accordingly, they requested, and the Debtor agreed, that Jersey law be designated as the applicable law to resolve any issues or disputes under the Consignment Agreement, which Debtor drafted on its letterhead for Kraken's signature.  Affidavit Bankr. Docket No. 941.

Since the filing of a UCC-1 in connection with a consignment agreement is unknown under Jersey law, Kraken did not file one.  Under Jersey law, the Consignment Agreement would be respected as written. Bankr. Docket No 978, Exhibit A.  Subject to an extraordinarily difficult "50/20" test, N.Y. substantive law (absent its own choice of law provisions) would apparently completely change the consignment agreement into, effectively, a financing document pursuant to which the consignor is expected to file a UCC-1 – the very same financing statement that a lender or contract creditor must file.  It is hard to find similar cases where a statute so fundamentally alters the terms and relationships created by a commercial contract.

In reliance on, and in compliance with, paragraph 1 of the Botticelli Consignment Agreement, Kraken delivered the Botticelli to the Debtor on May 11, 2006.  When the consignment period expired, the Debtor requested a short extension; Kraken agreed.  Thereafter, Kraken requested the return of the Botticelli.  The Debtor refused.  On October 26, 2007, Kraken commenced an action by way of order to show cause in the New York Supreme Court, New York County and sought an order of seizure to recover the Botticelli.  On November 1, 2007, an involuntary chapter 7 case was commenced against Debtor, which was converted to a case under Chapter 11 of the Bankruptcy

Code.  Under Chapter 11 Debtor obtained the benefits of the automatic stay of 11 U.S.C.

§ 362(a).  On November 15, 2007, Kraken filed a Motion for Relief from the Automatic

Stay and Order of Seizure in both bankruptcy proceedings. Bankr. Docket No 65.

Justice Cecilia Morris denied the motions without prejudice.

After more than a year of filings and hearings in the Bankruptcy court proceeding

a protocol was established to "***identify all claims against and interests in all of the

Artwork currently in the Debtor's possession, custody or control … and to resolve

disputed claims to Artwork in a fair, orderly and efficient manner."  Kraken requested

mediation pursuant to the Protocol.  After more than another year of delays, Kraken and

the Liquidation Trustee engaged in mediation, which ended in an impasse.  On January

19, 2011 Kraken moved for relief from the Automatic Stay, seeking permission to

proceed with arbitration in Jersey pursuant to the Consignment Agreement.  Bankr.

Docket Nos. 938-943.  After both an initial and subsequent series of briefs, all of which

are contained in the Designation of Contents, Kraken's Motion was denied by written

opinion of Judge Morris' Opinion, dated July 18, 2011.  Bankr. Docket Nos. 988 and

990. We appeal from that denial.

### SUMMARY OF THE ARGUMENT

The Bankruptcy Court erroneously characterized the issue raised by the

Appellant's Motion for a Stay as follows: "Whether the Botticelli is the property of the

Debtor is an element of a lien avoidance action that is property determined by the

bankruptcy court."  Bankr. Docket No. 988, P. 29.  Appellant does not seek to avoid a

lien.  Appellant's Motion did not rest on its status as creditor of the Bankruptcy Estate,

nor did Appellant seek to assert a lien on Estate assets.  Rather, Appellant asserted that it

owned the Botticelli, that the Botticelli was not an Estate assets; and that the determination of the ownership of the Botticelli – i.e. did the Debtors have an interest in the Botticelli at the time the bankruptcy proceeding commenced – is a matter to be determined in arbitration in Jersey. Rather, Appellant contests whether any lien could have attached to the Botticelli, since it was not pre-petition property of the Debtor and that that question must be resolved under Jersey law, by arbitration in Jersey as provided in the Consignment Agreement.

The essential question on appeal is what law should determine whether the Botticelli is part of the bankruptcy estate.  This depends on whether the Botticelli was part of the estate of the Debtor prior to commencement of the bankruptcy proceedings.

Whether the Botticelli was part of the Debtor's pre-petition estate is not a matter of federal bankruptcy law.  Since this matter comes before the federal courts under its federal law jurisdiction rather than diversity jurisdiction, a threshold determination must be made as to what non-federal law to apply in determining the pre-petition status of the Botticelli.  We respectfully submit that this is a matter of federal common law.

Under federal common law choice-of-law principles, Paragraph 11 of the Botticelli Consignment Agreement should be respected.  It provides a clear, unambiguous, and agreed to choice of law and choice of forum provision under which all disputes under or relating to the Botticelli Consignment Agreement should be decided under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands).

Kraken further submits that, even if New York law were applicable, its choice-of-law rules would respect the choice of Jersey law.   By applying a law fundamentally different from the one designated by the parties, the Bankruptcy Court effectively converted what is concededly a consignment agreement into some sort of financing arrangement.  This converted Appellant's ownership interest in the Botticelli to a mere security interest, <u>without consideration</u> for that conversion.  Such alchemy is inequitable in the extreme.

## ARGUMENT

I. **THE BANKRUPTCY COURT ERRED IN NOT APPLYING FEDERAL CONFLICT OF LAW RULES, WHICH ARE APPLICABLE IN NON-DIVERSITY ACTIONS, TO THE ISSUE OF WHICH LAW SHOULD BE USED TO DETERMINE THE PRE-PETITION OWNERSHIP OF A BOTTICELLI.**

Whether the Botticelli was part of the debtor's estate is a matter of state law, unless a "federal interest" requires a different result.  <u>Butner v. U.S. 440 U.S. 48 (1979)</u>. <u>In Re Dreier LLP</u>, 429 BR 112, 125 (S.D.N.Y. 2010).  "Under the United States Bankruptcy law, state law [defines] property interests and federal law [provides] the scheme of distribution."  <u>In re Koreag, Controle et Revision SA</u>, 961 F.2d 341, 351 (2d Cir. 1992).  In this case, there is no federal law question of, for example, voiding a transfer of the debtor's property or recovering a pre-bankruptcy preference.

Federal law, specifically the Bankruptcy Code as to priorities, liens and distributions, only applies after a determination has been made as to whether that property belongs to the property of the estate.  Other than the Working Group's self-serving and non-binding determination, no order stating that the Botticelli is an estate asset has been made – because the Botticelli is not and never was an estate asset.  Any

such order must follow the terms set forth in the Botticelli Consignment Agreement and therefore such a determination should only be made under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands).

A. Bankruptcy Court did not Analyze Pre-Petition Ownership

The Opinion rests on the constitutional abilities of a Bankruptcy Court. We respectfully argue that this missed the point of the Motion for a Stay. After an extensive analysis of Stern v. Marshall, 131 S. Ct. 2594 (2011), N. Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) and Granfinanciara S.A. v. Nordberg 492 U.S. 33 (1989), the Bankruptcy Court found:

> The thread that binds these cases is the concept that when the jurisdiction of the bankruptcy court is at issue, the adjudication of a proof of claim – a request for payment from the estate – is of paramount concern. '[The Congress shall have Power] To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States.' U.S. Const. art. I § 8, cl. 4 Congress created the Bankruptcy Code that governs today with the Bankruptcy Reform Act of 1978. Pub. L. No. 95-598, 92 State. 2549 (1978). This law creates an estate, made up of all the debtor's interests in property at the time the case is commenced. 11 U.S.C. § 541(a). It creates a trustee, the representative of the estate. 11 U.S.C. §§ 321-323. Chapter 11 of the Bankruptcy Code creates the debtor-in-possession, a legal entity distinct from the debtor, which may exercise many of the powers of the trustee. 11 U.S.C. §§ 1101, 1107. The Bankruptcy Code establishes a system of priorities to determine the order in which creditors are paid. 11 U.S.C. § 507. The Bankruptcy Code creates an automatic stay, which prevents collection of most debts from property of the estate while the debtor reorganizes. 11 U.S.C. § 362. The Bankruptcy Code creates a discharge, which may prevent the collection of a debt forever. See 11 U.S.C. § 1141(d) (confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation). Bankr. Docket No. 988, Pp. 18-19.

The issue presented by the Motion was not the "adjudication of a proof of claim." Nor did Appellants seek to enforce a claim as a "creditor." Nor did Appellant's claim "come before the [Bankruptcy] Court by virtue of a provision of the Bankruptcy Code."

Alan N. Resnick "The Enforceability of Arbitration Claims in Bankruptcy." 15 Am. Bank. L. Review 183, 193 (2007), relied on by the Bankruptcy Court. Bankr. Docket No. 988, P. 12.

The Opinion holds that "This law [the Bankruptcy Code and the Bankruptcy Reform Act of 1978] creates an estate, made up of all of the debtor's interests in property at the time the case is commenced." Bankr. Docket No. 988, P. 18. That is correct but not responsive. The question is <u>whether</u> the debtor had a pre-petition interest in the Botticelli, a matter the Bankruptcy Court wrongly assumed to be the case.

The Bankruptcy Court erroneously characterized the issue as follows: "Whether the Botticelli is the property of the Debtor is an element of a lien avoidance action that is property determined by the bankruptcy court." Bankr. Docket No. 988, P. 29. Appellant does not seek to avoid a lien. Appellant's Motion did not rest on its status as creditor of the Bankruptcy Estate, nor did Appellant seek to assert a lien on Estate assets. Rather, Appellant asserted that it owned the Botticelli, that the Botticelli was not an Estate assets; and that the determination of the ownership of the Botticelli – i.e. did the Debtors have an interest in the Botticelli at the time the bankruptcy proceeding commenced – is a matter to be determined in arbitration in Jersey. Rather, Appellant contests whether any lien could have attached to the Botticelli, since it was not pre-petition property of the Debtor and that that question must be resolved under Jersey law, by arbitration in Jersey as provided in the Consignment Agreement.

Thus, the determination of pre-petition ownership of the Botticelli is not a "core proceeding." "Non-core proceedings consist of those claims arising under traditional state law which must be determined by state law. They are those civil proceedings that,

9

in the absence of a petition in bankruptcy, could have been brought in a district court or state court." Interconnect Tel. Services, Inc., 59 BR 397, 399 (S.D.N.Y. 1986)(internal citations and quotations omitted). Kraken did in fact bring its claim in State Court, by way of order to show cause for an order of seizure, prior to the filing of the bankruptcy petition in this matter. Kraken Investments Limited and Golconda Fine Art Ltd v. Salander-O'Reilly Galleries, LLC, Supreme Court of the State of New York, County of New York, Index No. 603555/07. The Injunction is still in place in state court pending the automatic stay in this Court. The Bankruptcy Court erroneously determined otherwise in reliance on, *inter alia*, 28 U.S.C. § 157(b)(3) which provides that "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by a State law" (emphasis added). The pre-petition ownership of the Botticelli is not a matter which "may be affected" by state law; it is solely and exclusively a matter of state law.

    B.  Section 544 of the U.S. Bankruptcy Code does not Apply

    Reliance by the Bankruptcy Court on Section 544 of the Bankruptcy Code is misplaced. That section gives the Liquidation Trustee the rights and powers over "property of the debtor," including the power to avoid transfers of "property of the debtor." It does not define "property of the debtor", which, as more fully explained above, is a matter of state law (in this case, the law of Jersey). Kraken did not now question the rights and powers of the Liquidation Trustee over property of the Debtor. Rather, Kraken submitted that such rights and powers do not extend to the Botticelli because the Botticelli never was pre-petition "property of the debtor."

According to the "Plan" (the Third Amended Joint Plan of Liquidation Proposed by Salander O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors and First Republic Bank, So Ordered by the Bankruptcy Court on January 20, 2010 Bankr. Docket No. 779), the Liquidation Trustee stands "in the shoes of the debtor". That means that:

- The Liquidation Trustee has rights and powers over the Debtor's pre-petition property, but does not have proprietary property interests which the Debtor did not have.

- The Liquidation Trustee is bound by the Consignment Agreement including, without limitation, paragraph 11 thereof.

## II. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE ENFORCEMENT OF THE PARTIES' CONTRACTUAL CHOICE OF JERSEY LAW AND ARBITRATION CLAUSE IN THE CONSIGNMENT AGREEMENT AND THEREFORE ERRED IN FINDING THAT NEW YORK LAW PRE-EMPTS JERSEY LAW IN THE DETERMINATION OF THE PRE-PETITION STATUS OF A BOTTICELLI.

### A. State Laws Determine Property Rights

Whether the Botticelli was a part of the debtor's pre-petition estate (and, therefore, became a part of the bankruptcy estate) is not a matter of Federal (bankruptcy) law. *See* Butner v. U.S., 440 U.S. 48 (1979); In re Dreier LLP, 429 BR 112, 125 (S.D.N.Y. 2010); In re Koreag, Controle et Revision SA, 961 F.2d 341, 349 (2d Cir. 1992).

State law generally determines the property rights in the assets of a bankrupt's estate since such 'property interests are created and defined by state law'. See Nobelman v. American Savings Bank, 124 L. Ed. 2d 228, 113 S. Ct. 2106, 2110 (1993) (quoting Butner v. United States, 440 U.S. 48, 54-55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979)).  In Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 91 L. Ed. 162, 67 S. Ct. 237 (1946), Justice Frankfurter stated that 'no obligation finds its way into a bankruptcy court unless, by the law of the State where the acts constituting the transaction occur, the legal consequences of such a transaction is an obligation to pay'. Id. At 161.  As the Second Circuit stated in

11

the case of In re Koreag, controle et Revision S.A., 961 F.2d 341 (2d Cir. 1992), 'although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the 'nature of a debtor's interest' in a given item'. Id. At 349 (emphasis added).   In re Chateaugay et al., 170 B.R. 551, 554 (S.D.N.Y. 1994)(internal citations omitted).

The "doctrine of Butner" was recognized and followed in a recent opinion by

Circuit Judge Leval.

> Under the doctrine of Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 59 L. F.d 2d 136 (1979), principles of state law govern the interpretation of contractual provisions in bankruptcy.  Under New York law, which governs by reason of the choice of law clauses in the TIA, '[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent'.   Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 780 N.E.2d 166, 170, 750 N.Y.S.2d 565 (2002).  While '[t]he best evidence of what parties to a written agreement intend is what they say in their writing'. Id.   Each word must be considered along with not only all the other words that surround it, but also the history and education of the parties, the nature of the contract, the purposes of the parties and all other relevant circumstances.   In re Delta Airlines, 603 F.3d 139, 146 (2d Cir. 2010)(citing  *5 Corbin on Contracts* § 24.21 (Joseph M. Perillo ed., 2009); Accord Aron v. Gillman, 309 N.Y. 157, 128 N.E.2d 284 288 (N.Y. 1955)).

As Judge Laval noted, New York law governed in Delta Airlines "by reason of

the choice of law clauses in the TIA" (emphasis added.).  There is no question

about the terms of the contractual choice of law in this case.  It provides that:

> Any disputes between the parties, including any disputes regarding this agreement, will be referred to arbitration.   The sole arbitrator to be appointed will be a former Judge of the Royal Court of Jersey, Channel Islands, or another suitably qualified person.  Arbitration will take place in Jersey, Channel Islands, with the only competent Court to be the Royal Court of Jersey, Channel Islands.   Jersey, Channel Islands law will apply to this agreement, including the Arbitration (Jersey) law 1998. (emphasis added).

The only question is its enforceability.

B. <u>Federal Conflict of Law Determines which State's Property Rights Laws Apply</u>

Since this case arises a matter of federal law, not under diversity jurisdiction, federal common law determine which non-federal law should be used to test the enforceability of a contractual choice-of-law provision.

> A bankruptcy court applies federal common law choice-of-law rules to determine the enforceability of a contractual choice-of-law provision, even when the resolution of the underlying dispute turns on state law. (citation omitted). Federal common law applies section 187 of the Restatement (Second) Conflicts of Law to determine the enforceability of contractual choice-of-law provisions. <u>In re CMR Mortgage Fund, LLC</u> 416 B.R. 720, 728 (Bankr. N.D.C.A. 2009).

Restatement (Second) Conflicts of Laws, Section 187. Law of the State Chosen by the Parties provides in full:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of s 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Comment g. to *Restatement (Second) Conflicts of Laws*, Section 187 states:

> To be "fundamental," a policy must in any event be a substantial one. Except perhaps in the case of contracts relating to wills, a policy of this sort will rarely be found in a requirement, such as the statute of frauds, that relates to formalities. Nor is such policy likely to be represented by a rule tending to become obsolete, such as a rule concerned with the

13

capacity of married women, or by general rules of contract law, such as those concerned with the need for consideration. On the other hand, a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. (internal citations omitted).

This principle was applied by the Second Circuit Court of Appeals in affirming a grant of summary judgment by the Bankruptcy Court of the S.D.N.Y.

In transactions of an international character, freely negotiated choice-of-forum and choice-of-law clauses are binding unless a court finds that it would be unfair, unjust, or unreasonable to hold [a] party to his bargain. The Bremen et al. v. Zapata Off-Shore Co., 407 U.S. 1, 18, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972)(internal citations omitted).

In the absence of other considerations, the agreement to submit to arbitration or the jurisdiction of [foreign] courts must be enforced even if [the] agreement tacitly includes of the forfeiture of some claims that could have been brought in a different forum.  In re Millenium Seacarriers Inc., 96 Fed Appx 753, 757 (2d Cir. 2004) (citing Roby, et al. v. Corporation of Lloyd's et al., 996 F.2d 1353, 1360-61 (2d Cir. 1993)) (emphasis added).

The Order seeks to avoid the clear holdings of Butner, Koreag, Drier and other cases cited in Appellant's briefs to the Bankruptcy Court by reference to Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941) – a case which predates Butner by 38 years and one in which the courts jurisdiction was based on diversity, not a federal question - and by referring to the "greater contacts" analysis in Koreag.  Bankr. Docket No. 988, P.31, Footnote 8. However, in Koreag, as in Klaxon and In re Valley Media, 279 B.R. 105, 125, 133 (Bankr. D. Del. 2002) (another case relied on by the Bankruptcy Court), there was no apparent choice-of-law contract clause. Thus, unlike in this case, recourse to a "greater contacts" analysis in Koreag may have been appropriate.  It is not appropriate in this case.

14

III.   **THE BANKRUPTCY COURT ERRED IN FINDING THAT NEW YORK LAW WOULD NOT RESPECT THE PARTIES' CONTRACTUAL CHOICE OF JERSEY LAW.**

The relevant law in New York (the situs of the bankruptcy proceeding and the business address of the debtor) is the Uniform Commercial Code.  The Uniform Commercial Code and its attendant caselaw have several substitutive provisions dealing with the determination of the characterization of the transaction between Kraken and the Debtor.  The federal common law choice-of-law, which points to Jersey, is dispositive and binding.  However, the result is the same if New York State's conflicts law is applied in Bankruptcy Court.

> The Courts of New York have given effect to a contractual choice-of-law clause calling for governance by the laws of a particular state unless application of that law would be an affront to the law or public policy of some states with more significant contact with the matter in dispute. In the Matter of Penn-Dixie Industries, Inc., 22 B.R. 794, 797, (Bankr. S.D.N.Y. 1982) (opinion by Bankruptcy Judge Lifland).

The Second Circuit recognized New York law in this area in 2009 as follows:

> Under New York's choice of law rules, it is clear that 'in cases involving a contract with an express choice of law provision … a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction,' unless there is fraud, violation of public policy, or no 'reasonable basis for choosing the law of the jurisdiction designated the parties. Aramarine Brokerage Inc. v. OneBeacon Insurance Company, 307 Fed App. 562, 564 (2d Cir. 2009)(citing  Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000); Freedman v. Chemical Constr. Corp.,  43 N.Y.2d 260, 265, 372 N.E.2d 12, 401 N.Y.S.2d 176 (1977)).

A.   New York Uniform Commercial Code

The Federal rule of respect for contractual choice-of-law provisions is reflected in New York's Uniform Commercial Code § 1-105 which is more fully analyzed in

Appellant January 19th 2011 and June 10, 2011 Memoranda of Law, (Bankr. Docket No.

939, 978 and 983)[2] and which provides:

> § 1-105.   Territorial Application of the Act; Parties' Power to
> Choose Applicable Law.  (1) Except as provided hereafter in this
> section, when a transaction bears a reasonable relation to this state
> and also to another state or nation the parties may agree that the
> law either of this state or of such other state or nation shall govern
> their rights and duties.  Failing such agreement this Act applies to
> transactions bearing an appropriate relation to this state.

This is consistent with the overriding purpose and policy of the UCC as expressed

in UCC 1-102:

> (1) The Act shall be liberally construed and applied to promote its
> underlying purposes and policies ..., (2)(b) to permit the continued
> expansion of commercial practices through custom, usage and
> agreement of the parties. (emphasis added).

This policy is consistent with New York's long standing position as one of the

world's leading commercial centers.  One factor in establishing and maintaining that

position is the protection accorded for fully negotiated contracts.

The only exception to UCC 1-105(1) which is *prima facie* possibly relevant is

UCC 9-301, Law Governing Perfection and Priority of Security Interests.  This section

deals with the priorities, and effects of perfection and non-perfection IF, and only if,

there is a requirement to perfect "a security interest in collateral."  In this case, the issue

is not the ranking or priority of different security interests but rather whether a valid and

enforceable security interest could have attached to the Botticelli.  Kraken was not a

creditor of the debtor.  Kraken was, and remains, the owner and consignor/bailor of the

Botticelli under a common law consignment agreement.  Under the agreed law

establishing their relationship, there was no loan or borrowing to secure, there was no

---

[2] Contrary to the Bankruptcy Court's assertions in its Order (Bankr. Docket No. 988, Pp. 49 and 51) that
Kraken "fails to address UCC §1-105(2)", Appellant did so did so in its memoranda of law.

pledge or security interest to perfect.  UCC 9-301, does not deal with <u>whether</u> a security

interest must be filed.  The Uniform Law Comment to Revised Article 9 of the UCC

provides:

> 2.  Scope of This Subpart. Part 3, Subpart 1 (Sections 9-301
> through 9-307) contains choice-of-law rules similar to those of
> former Section 9-103.  Former Section 9-103 generally addresses
> which State's law governs "perfection and the effect of perfection
> or non-perfection of" security interests.  <u>This subpart does not
> address choice of law for other purposes. For example, the law
> applicable to issues such as attachment, validity, characterization
> (e.g., true lease or security interest), and enforcement is governed
> by the rules in Section 1-105; that governing law typically is
> specified in the same agreement that contains the security
> agreement.</u> (emphasis added).

"If that choice-of-law term is enforceable, the chosen-state's law will govern the

attachment, validity, and enforcement of the security interest, and the characterization of

the transaction". *Special Report of the Tribar Opinion Committee*, U.C.C. Security

Interest Opinions – Revised Article 9,  published in *The Business Lawyer;* Vol. 58,

August 2003 (<u>citing</u> U.C.C. § 9-301 cmt.2).

This is the heart of *Kraken's* position:  the proper characterization of its pre-

petition relationship with the debtor is a matter of Jersey law, to be determined in Jersey

– as agreed by the parties.  Any other reading of UCC § 9-301, which is unsupported by

any case law or other authority, is not only an unjustified stretch of its text but is

inconsistent with the clear and unambiguous policy expressed in UCC 1-102 and 1-105.

<u>Hong Kong and Shanghai Bank v. HFH USA Corporation</u>, 805 F.Supp 133

(W.D.N.Y. 1992), relied on by the bankruptcy Court is inapposite because (a) it was in

the federal court by virtue of diversity jurisdiction (b) it involved the priority of different

security interests whereas here the essence of Appellant's position is that it has an

ownership interest not a security interest and that a security interest never attached to its

property and (c) unlike in HSBSC, this case does not involve a transaction "intended to create a security interest in personal property", the subject of UCC 9-102(1)(a) relied on in the HSBC decision. Id. at 140.

The exceptions to UCC 1-105(1) in UCC 1-105(2) do not apply and the general rule of UCC 1-105(1) that a contractual choice of law should be respected dictates that, even under the UCC (which, we maintain is not the applicable law), the characterization of the pre-petition Kraken-debtor relationship would still be a matter of Jersey law. Under New York Law,

> It is clear that in cases involving a contract with an express choice of law provision … a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction. Mcphee v. General Electric International, Inc., 2010 U.S. Dist. Lexis 42945, (S.D.N.Y. 2010) (internal quotations and citations omitted).

As more fully explained in Ronald Furhrer's Affidavit of January 5, 2011 (Bankr. Docket No. 941). The choice of Jersey law was not casual, forum-shopping or the product of duress or fraud.   Dr. Fuhrer, Kraken's sole owner, is a recognized and experienced art dealer in Israel but neither he nor the principals of Kraken were familiar with New York law or practice.   Kraken is an entity resident and with its principal place of business in Jersey.   Its principals had extensive knowledge of Jersey law and therefore asked that Jersey law be the standard adopted for the resolution of any disputes about or related to the Botticelli consignment. The Debtor agreed. The Consignment Agreement was written by the Debtor on its letterhead, but was sent to Kraken, at its principal place of business at 19 Seaton Place, St. Helier, Jersey, Channel Islands, and signed there by J. Rimeur, a resident of Jersey and a director of Kraken, who then and only then arranged to send the Botticelli to the debtor in New York.   There is clearly a

"reasonable relationship" between the consignment of the Botticelli and Jersey, the jurisdiction of its owner.  See In <u>Cap Gemini Ernst & Young v. Nackel</u>, 346 F3d 360 (2d Cir. 2003) and In <u>Walsbach Electric Corp. v. Mastec North America, Inc.</u>, 7 N.Y.3d. 624 (2006), more fully explained in Appellants Supplemental Memorandum of Law dated June 17, 2011 (Bankr. Docket No. 978).  The "reasonable relationship" in this case was not challenged by the Appellee.

The freedom to contract has limits.  Courts will not, for example, enforce agreements that are illegal or where the chosen law violates "some <u>fundamental principle</u> of justice, some <u>prevalent conception of good morals</u>, some <u>deep-rooted tradition</u> of the common weal".  <u>Cooney v. Osgood Machinery Inc.</u>, 81 NY2d 66, 78 (1993)(quoting <u>Loucks v Standard Oil Co. of N.Y.</u>, 224 N.Y. 99, 111, 120 N.E. 198 (1918) [Cardozo, J.](emphasis added)); See generally *Restatement (Second) of Conflict of Laws, Section 187 (2)).*  "If … the foreign law does not entail any such violation … full effect should be given to the law of our sister State".  <u>Ehrlich-Bober 7 Co. v. University of Houston</u>, 49 N.Y.2d 574, 584, 404 N.E.2d 726, 427 N.Y.S.2d 604 (1980).  Crucially, however, we have reserved the public policy exception "for those foreign laws that are <u>truly obnoxious</u>". (<u>Cooney</u>, 82 N.Y.2d at 79) (emphasis added).

> Although we have noted that public policy may be found in the State Constitution, statutes and judicial decisions, plainly not every difference between foreign and New York law threatens our public policy.  Indeed, if New York statutes or court opinions were routinely read to express fundamental policy, choice of law principles would be meaningless.  Courts invariably would be forced to prefer New York law over conflicting foreign law on public policy grounds.  <u>Id</u>. at 78-79.

Whether Kraken could satisfy the burden of proof it might have if UCC 9-102 (a)(20) were applicable was not before the Court on the instant Motion.  Suffice it to say

19

that "the balance that the State of New York reached" (In re Morgansen's Ltd., 302 B.R. 784, 789 (Bankr. E.D.N.Y. 2003) does not reflect a fundamental principle of justice, good morals or some deep-rooted tradition of the common weal.  Even if Jersey substantive law would lead to a result different from New York law, it can hardly be said that the Jersey law violates some fundamental principle of justice or good morals or that it is not only obnoxious but "truly obnoxious."  Jersey law does not violate any fundamental federal bankruptcy law or principle.  Therefore, we respectfully submit that there is no basis in federal law or state on which to either ignore the contractual choice of Jersey law or to disregard the consequences of determining the critical issue (of whether the Botticelli was  part of  the debtor's pre-petition estate) under Jersey law.

B.  Arbitration

The Bankruptcy Court also erred in not respecting the arbitration provision in paragraph 11 of the Consignment Agreement.  Bankr. Docket No. 988, P. 32.  This was based on the erroneous view that the issue of the pre-petition ownership of the Botticelli is a "case pending."  Bankr. Docket No. 988, P. 33.

Both Federal and New York law generally favor arbitration as a matter of public policy (See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987), and 9 U.S.C. § 2, and Maross Constr., Inc. v. Central New York Regional Transp. Authority, 66 N.Y.2d 341 (1985) and NY CPLR 7503, respectively), as do the Bankruptcy Courts (MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104 (2d Cir. 2006)).

> The question with which we are presented is whether the trustee is bound by that agreement [a Customer's Agreement between Merrill Lynch and Monge] signed by the debtor before entering Chapter 11 bankruptcy.  We hold that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee plaintiff is bound by the clause to the same extent as would the debtor. Hays and Company as

<u>Trustee for Monge Oil Corporation v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F2d, 1149, 1150 (3d Cir. 1989) (emphasis added).

This holding should apply to the arbitration clause of paragraph 11 of the Consignment Agreement and, as more fully explained above, its choice of law clause.

The Bankruptcy Court recognized the strong federal policy favoring arbitration. Bankr. Docket No. 988, Pp. 33-36. The Bankruptcy Court notes that § 544(b) claims are not arbitrable – but Appellant does not make a § 544(b) claim. Rather, Appellant's position is that § 544(b) is inapplicable because the Botticelli was not a pre-petition asset of the Debtor and, therefore, is not and could not have been an asset of the bankruptcy estate. Likewise, there is no debtor – creditor relation to restructure (as was the case in <u>N. Pipeline Construction</u>, cited at page 37 of the Opinion (Bankr. Docket No. 988) because no such debtor – creditor relation existed. Likewise inappropriate  is <u>In re United States Lines</u>, 197 F3d 631 (2d Cir. 1999) relied on by the Bankruptcy Court since there – but not here – the court was faced with "fixing the order of priority of creditor claims against a debtor [and] placing the property of the debtor … under the control of the court." Bankr. Docket No. 988, P. 42.

The Bankruptcy Court justifies using its equity power under § 105(b) of the Bankruptcy Code to require "the policy in favor of arbitration to yield to the integrity of the reorganization process in the bankruptcy court in certain circumstances", consistent with the Bankruptcy Code support of "consolidation of reorganization and the attendant activities in a single form, the bankruptcy court." Bankr. Docket No. 988, P. 35.  In this case, no such considerations of judicial economy apply.  It is clear (see Opinion on Jersey Law by Mourant Ozannes, dated June 7, 2011, and exhibits thereto, Exhibits A and B to Appellants' Memorandum of Law dated June 17, 2011 – (Bankr. Docket No.

978), and uncontested that, under Jersey law, the Botticelli would be returned to its

rightful owner, the Appellants.  See Appellants Memorandum of Law dated June 17,

2011 at pages 18-20.

The Bankruptcy Court's reasoning in fact supports the enforceability of the

arbitration clause in paragraph 11 of the Consignment Agreement.

## IV.    THE BANKRUPTCY COURT ERRED IN ITS ASSUMPTION OF A VALID PRE-PETITION BANK LIEN ON THE BOTTICELLI, WITHOUT ANALYSIS, WHEN THE BANK LOAN DOCUMENTS ON THEIR FACE DISCLAIM CONSIGNED ART AS COLLATERAL.

The Liquidation Trustee relies on an assignment of a lien in favor of First

Republic Bank (the "Bank").  This assumes, inter alia, that (a) the debtor had a pre-

petition interest in the Botticelli to which the Bank's lien could attach and (b) that the

Bank's lien did in fact attach to the Botticelli.

The validity of first assumption is in direct conflict with Section 1.4 of the Credit

Agreement dated April 14, 2006 which expressly excluded any lien on items held by the

Debtor on consignment, a matter which was not before the Bankruptcy Court.  It should

be decided in Jersey, in arbitration under Jersey law. The second assumption, the validity

of which was also was not before the Bankruptcy Court is – at best – highly suspect.  Yet

the Bankruptcy Court seemed to (erroneously) accept both assumptions.  Bankr. Docket

No. 988, P.8.  The Liquidation Trustee does not claim that the debtor owned the

Botticelli.  The interest he claims is that of an assignee of the Bank's security interest.

However, the Bank could not have had a security interest in the Botticelli under the terms

of The Amended and Restated Credit Agreement between First Republic Bank and

Salander-O'Reilly Galleries LLC, dated April 14, 2006 ("Credit Agreement").  Bankr.

Docket No. 984.  The Bank did not intend to lend based on property which Salander did

not own absolutely and to which Salander did not have free and clear title.

Section 1.4 of the Credit Agreement dated April 14, 2006 defines:

Eligible Inventory [inventory eligible to be included in the borrowing base
as] any works of art … (collectively, "Artwork") held by the Borrower for
sale by the Borrower, which: … (b) <u>Are not held by the Borrower on
consignment</u>; … (d) <u>Are owned absolutely by the Borrower</u>, free and clear
of all liens and encumbrances other than those in favor of the Bank;
(emphasis added).

If the exclusion of Artwork in Section 1.4(b) "not held by the Borrower on

consignment" was intended to be limited to "Artwork held on consignment with respect

to which a UCC-1 was filed" it should and could have said so.  It did not.

The Botticelli could not be included in the "Collateral" which included only items

of which "[t]he Borrower shall <u>be the sole owner</u>, free and clear of all liens, claims …".

If this were not the case, there would be no reason for the Borrower's representation,

warranty and covenant in Section 6.2(a).  In Section 6.2(a) of the April 14, 2006 Credit

Agreement, the Borrower (Salander) represents that "<u>[t]he Borrower shall be the sole</u>

<u>owner</u>, free and clear of all liens, claims, security interests and encumbrances…".

(emphasis added). These provisions of the April 14, 2006 Credit Agreement are critical.

They establish that the Bank would not consider consigned art as eligible Collateral.

Even if, which Kraken does not concede, the Bank might have been able to obtain

a security interest in the Botticelli under New York law, it explicitly disclaimed any

intent to do so, relying for security only on Artwork <u>owned</u> by the Borrower/debtor.

Even a cursory look at the debtor's records, to which the Bank had full access at

all times, would have shown the Bank that the debtor did not own the Botticelli.  There is

no indication or evidence that the debtor misrepresented to the Bank that it owned the

Botticelli, free and clear.  There is also no evidence that, contrary to the explicit terms of
the Credit Agreement, the Bank lent any money to the debtor based on the value of the
non-owned Botticelli.  There was no security interest in favor of the Bank which it could
transfer to the Liquidation Trustee.

- On October 26, 2007, Kraken commenced a civil action by Order to Show Cause
  in the New York State Supreme Court, New York County seeking an Order of
  Seizure of the Artwork pursuant to CPLR 7102 which was signed by Justice
  Richard B. Lowe III who set a hearing date of November 7, 2007.
- All property located in the Salander-O'Reilly Gallery located at 22 East 71 Street,
  New York New York 10028, including the Artwork, was moved to offsite storage
  warehouses and is subject to an injunction order, Roy Lennox v. Salander-
  O'Reilly Galleries, LLC and Lawrence B. Salander, Index No. 602917/07,3
  which was filed on October 12, 2007 ("Injunction").
- On November 1, 2007, an involuntary chapter 7 case was commenced against
  Salander in the United States District Court for the Southern District of New York
  (Case No. 07-30005 (CGM), which was converted to a case under Chapter 11 of
  the Bankruptcy Code.  Under Chapter 11 Debtor obtained the benefits of the
  automatic stay of 11 U.S.C. § 362(a).  The individual debtors then filed for
  bankruptcy (Case No. 07-36735 (CGM)).
- On November 7, 2007, the day of the scheduled hearing on Kraken and
  Golconda's Order to Show Cause in New York State Supreme Court, New York
  County, Justice Richard B. Lowe III, ordered a stay of all proceedings against
  Salander-O'Reilly Galleries, LLC pending the bankruptcy proceedings, but stated
  that the Injunction remained in place to protect the plaintiffs in the various state
  court actions.
- On September 21, 2007, RAI filed a UCC Financing Statement (amending its
  April 14, 2006 filing) which listed the Botticelli on Exhibit A as No. 677.  RAI
  has since conceded that it has no interest in the Botticelli.  On October 15, 2007,
  in State Court in the matter of Renaissance Art Investors, LLC et al. v. Salander-
  O'Reilly Galleries, LLC (Index No. 302917/07), Barry Slotnick, Esq., counsel for
  RAI stated:

  > The Salander Group represents that it used the Plaintiffs' [RAI's]
  > assets to acquire additional subject art and that subject art belongs
  > to Plaintiffs; the October 14, 2007 schedule that contains
  > approximately – or it contains exactly 643 pieces to be taken by the
  > Plaintiff subject to the following exceptions: the first is that
  > number 487 on the October 14, 2007, which is a Botticelli, is
  > excluded…".

---

[3] The following case was also consolidated Renaissance Art Investors, LLC, Triple S Management, LLC
and Old Master Properties LLC v. Salander-O'Reilly Galleries, LLC, L. Salander LLC and Lawrence B.
Salander, Index No. 406611/07.

Therefore, although Kraken does not believe this issue is relevant to the matter now before this court, the Bank was on notice that Salander did not own the Botticelli and, as a result, disclaimed any security interest in it.

The Liquidation Trustee claims to be as an assignee of a non-existent security interest.  His claim does not withstand scrutiny.

## CONCLUSION

For all of the reasons set forth above, the issue of whether the Botticelli was part of the estate of the debtor must be determined under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands).

Appellant respectfully prays for an order reversing the Order of the Bankruptcy Court and directing the Bankruptcy Court to grant relief from the automatic stay permitting Kraken to commence arbitration under Jersey (Channel Islands) law, including the Arbitration (Jersey) Law 1998, by a retired judge of the Royal Court of Jersey (Channel Islands), in an arbitration in Jersey (Channel Islands) against Alan M. Jacobs, in his capacity as Liquidation Trustee of the SOG Liquidation Trust; and for such other and further relief as is just and proper.

Dated: September 28, 2011
       New York, New York

                                         FAUST OPPENHEIM LLP

                              BY:        _____
                              Attorneys for KRAKEN INVESTMENTS LIMITED
                                         David I. Faust (DF-9739)
                                         Petra von Ziegesar (PV-3568)
                                         488 Madison Avenue, 17th Floor
                                         New York, New York 10022
                                         T: (212) 751-7700